NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0128n.06

No. 09-1248

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Feb 25, 2011**
LEONARD GREEN, Clerk

| | |
|---|---|
| HEATHER ROBINSON, ) | |
| ) | |
| Petitioner-Appellant, ) | |
| ) | |
| v. ) | ON APPEAL FROM THE UNITED |
| ) | STATES DISTRICT COURT FOR THE |
| SUE DAVIS, Warden, ) | EASTERN DISTRICT OF MICHIGAN |
| ) | |
| Respondent-Appellee. ) | |
| ) | |

Before: SILER, CLAY, and GIBBONS, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Defendant Heather Robinson brings this appeal seeking review of the district court's decision denying her a writ of *habeas corpus* under 28 U.S.C. § 2254. Robinson was convicted of criminal sexual conduct in the first degree, in violation of Mich. Comp. Laws § 750.520b(1)(a), and sentenced to twenty to forty years' imprisonment. She brings claims for ineffective assistance of counsel and for violations of due process. For the following reasons, we affirm the district court's denial of Robinson's petition.

I.

Robinson is the mother of D.R., a minor born in April 1993. In November 1998, Robinson was sentenced to six months' imprisonment after being convicted of aggravated assault. While Robinson was imprisoned, D.R.'s grandparents, Sandra and Walter Peterman, took custody of D.R.

-1-

On March 7, 1999, D.R. reported to Walter Peterman that he and his mother had previously had sexual intercourse when he was five years old. The Petermans contacted law enforcement; on April 7, 1999, an interdisciplinary team of counselors and law enforcement met to interview D.R. and assess the allegations. D.R. repeated the allegation of sexual penetration, and persons present at the meeting largely concluded D.R. was not fabricating the abuse allegation. Robinson was charged with criminal sexual conduct on September 3, 1999.

At trial, the State called D.R., who testified that while he had lived with Robinson, he had penetrated Robinson's vagina with his penis, touched Robinson's vagina with his fingers, and sucked on her vagina. He also testified that Robinson told him not to tell anyone. The State also called both Sandra and Walter Peterman. Walter Peterman described his conversation with D.R. on March 7, 1999. Sandra Peterman also testified as to hearing D.R.'s conversation with Walter Peterman. She said that Robinson later confided to her that she was going to attend a therapy group for perpetrators of sexual abuse when she was released from jail, which Mrs. Peterman took as an admission of guilt.

In addition to cross-examining each of the State's witnesses and objecting to proffered evidence as inadmissible under the Michigan Rules of Evidence,[1] Robinson's counsel called three witnesses. Robinson took the stand and testified that she never abused D.R. She described animosity between her and her mother, and testified that Sandra Peterman had told her at D.R.'s birth that "she was going to get this baby." Robinson testified that certain aspects of D.R.'s testimony

---

[1] During the course of the trial, the prosecution tried to offer a statement by Robinson to a therapist that she had had sex with D.R. when she was drunk. The statement, however, was ruled privileged under Michigan evidentiary law and not admitted.

were factually incorrect. Specifically, Robinson testified that she shaves her pelvic region, so D.R.'s description of Robinson's pelvic area as "hairy" was incorrect.

In addition to Robinson, two other witnesses testified for the defense. Karol Ross, a behavioral investigator focusing on diagnostics, testified about recent behavioral evidence that children are "enormously cooperative and compliant and . . . will tell you what they perceive you want to hear." Ross also stated that in her opinion there was not an adequate investigation of D.R.'s claims, because there was no evaluation of the Petermans' possible "underlying agendas," nor was there any forensic interview done immediately after D.R. reported the abuse. The crux of Ross's testimony was that children were susceptible to the suggestions of the interviewees and that the persons who had investigated D.R.'s allegations had not sufficiently assessed the reliability of D.R.'s testimony. The defense also called Mary Kay Neumann, a social worker for the Oakland County's prosecutor's office, and questioned her about the adequacy of the government's investigation into D.R.'s allegations.

After approximately a day-and-a-half of deliberations, a jury convicted Robinson of criminal sexual conduct in the first degree. Robinson filed an appeal of right, raising claims that included ineffective assistance of counsel and prosecutorial misconduct. In response to the claims of ineffective assistance of counsel, the trial court held an evidentiary hearing to determine the adequacy of counsel, as required by state law.[2]

---

[2] Michigan generally requires a hearing when such claims are raised. *People v. Ginther*, 212 N.W.2d 922, 925 (Mich. 1973) ("A defendant who wishes to advance claims that depend on matters not of record can properly be required to seek at the trial court level an evidentiary hearing for the purpose of establishing his claims with evidence as a precondition to invoking the processes of the

At that hearing, Robinson's trial counsel discussed his trial strategy, which emphasized the propensity of children to fabricate claims when improperly influenced by others. Trial counsel was also asked about certain tactical decisions with respect to witnesses. For instance, counsel was asked why he opted not to call Dr. Catherine Okla, a clinical psychologist who had been consulted in preparation for this case. Trial counsel explained that Okla's testimony would have been largely the same as Ross's testimony, and certain evidentiary hurdles faced during Ross's direct examination would have been the same for Okla.[3] Counsel, however, testified that he had considered the issue in detail and concluded that he "would simply be playing the same theme again with Doctor Okla in a conclusory way." Robinson's new attorney also asked trial counsel about his decision not to call Mark Fecteau as a fact witness at trial. Trial counsel explained that there was "hostility between" Fecteau and Robinson, which made the prospect of calling him a "pretty risky business."

The Michigan Court of Appeals affirmed Robinson's conviction in May 2003. First, the appellate court found no problem with the witnesses that trial counsel chose. "Defense counsel's decisions with respect to the witnesses who were called and the evidence that was presented were matters of trial strategy, which this Court will not second-guess." *People v. Robinson*, No. 230187, 2003 WL 21205841, at *3 (Mich. Ct. App. May 22, 2003) (unpublished). The court was satisfied

appellate courts except in the rare case . . . .").

[3] The central evidentiary issue was the trial judge's ruling that Ross could not discuss specific details of notes and reports completed by D.R.'s therapist, Lou Goldman, that were based on his interactions with D.R. before and after the abuse was reported. The trial court's evidentiary ruling was affirmed by the Michigan Court of Appeals. *People v. Robinson*, No. 230187, 2003 WL 21205841, at *2 (Mich. Ct. App. May 22, 2003) (unpublished).

that trial counsel had followed a genuine trial strategy and provided sound reasons for not calling Okla, Fecteau, or other witnesses. *Id.* at *3–4. Similarly, the court was not persuaded that trial counsel was constitutionally ineffective in his handling of Ross's testimony. Despite having had certain lines of questions disqualified by the district court on hearsay grounds, the appellate court concluded that "counsel was successful in presenting the core of Ross's testimony, and we are satisfied that a more complete discussion of the issues would not have affected the outcome of the trial." *Id.* at *3. The Michigan Court of Appeals also rejected Robinson's claim that the prosecutor committed misconduct in eliciting lurid testimony and in making lurid remarks. *Id.* at *5.

Robinson filed for leave to appeal in the Michigan Supreme Court, but was denied in October 2003. *People v. Robinson*, 671 N.W.2d 51 (Mich. 2003) (table). Robinson's motion for postconviction relief from judgment under state rules was denied by the Michigan Supreme Court in November 2005. *People v. Robinson*, 707 N.W.2d 204 (Mich. 2005) (table).

In March 2006, Robinson petitioned the United States District Court for the Eastern District of Michigan for a writ of *habeas corpus*. The district court rejected all of Robinson's claims, concluding that trial counsel was neither ineffective in presenting his expert witness, nor in allowing into evidence, without objection, testimony which cast Robinson in an unfavorable light. The court found that trial counsel's strategy to allow the jury to hear about Robinson's past mistakes was acceptable; in particular, counsel cogently explained his strategy to the jury in his closing arguments. The strategy, the district court concluded, was to allow the jury to hear the information in order "to assert that Petitioner's parents had lost all faith in her and were predisposed to assume the worst . . . .

Therefore, trial counsel argued that the Petitioner's parents may have unintentionally encouraged [D.R.] to come forth with sexual abuse allegations."

Similarly, the district court concluded that the trial counsel's decisions about experts were strategic and sound. As to allegations that trial counsel was unprepared for trial, the court concluded that "the record belies Petitioner's argument that trial counsel did not adequately prepare to present expert testimony." Moreover, the court found that trial counsel was able to adequately present the substantive points of the expert's testimony—dealing with the reliability of child testimony—despite the fact that the trial court sustained several objections on hearsay grounds. The district court also agreed with the trial counsel's testimony that calling the second expert, Okla, would have been duplicative and encountered the same hearsay problems that the first expert faced[4] and concluded that trial counsel's decision not to call Fecteau was well-founded in the rational fear that involving him in the case would be counterproductive given the hostility between Robinson and Fecteau.

II.

A district court's legal conclusions about a *habeas* petition are reviewed *de novo*. *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006). The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), however, circumscribe the review performed by federal courts examining applications for a writ of *habeas corpus*. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). Under 28 U.S.C. § 2254(d),

---

[4] The district court rejected many other claims made by Robinson, including due process claims and a challenge to the constitutionality of the habeas standards of 28 U.S.C. § 2254. Robinson has not pursued these claims on appeal.

an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The Supreme Court has made clear that "federal habeas courts must make as the starting point of their analysis the state courts' determinations," and that "Congress intended federal judges to attend with the utmost care to state-court decisions . . . before concluding that those proceedings were infected by constitutional error sufficiently serious to warrant the issuance of the writ." *Williams v. Taylor*, 529 U.S. 362, 386 (2000).

### III.

All of Robinson's claims on appeal allege ineffective assistance of counsel. An ineffective assistance of counsel claim has two components:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).

### A.

Robinson first claims that "[t]rial defense counsel completely 'fell apart' after a series of erroneous hearsay rulings" and that counsel's "failure to explain" its litigation strategy to the trial court "contributed to the court's erroneous rulings." The argument here is not that counsel

improperly proffered evidence or failed to proffer admissible evidence, but rather that counsel did

not sufficiently convince the trial judge that its ruling on certain evidence's admissibility was in

error. Robinson, in short, argues that the trial court was wrong as to its evidentiary issues, but it was

defense counsel's fault that the trial court ruled incorrectly on a matter of law.

The writ of *habeas corpus* cannot be granted on the grounds of erroneous application of state

law—the words of § 2254 limit the issuance of the writ to circumstances when the state court

erroneously applied "clearly established *Federal* law." 28 U.S.C. § 2254 (emphasis added). Even

if the state court did incorrectly apply Michigan rules of evidence, that error provides no basis for

*habeas* relief. *Railey v. Webb*, 540 F.3d 393, 398 (6th Cir. 2008) ("[W]e do not consider on habeas

review a state court's determination of state law."). Robinson is therefore precluded from litigating

the question of the admissibility of certain testimony proffered by the defense's expert, Karol Ross.

To the extent that Robinson's claim focuses on counsel's failure to prevail in his evidentiary

arguments, we know of no precedent finding counsel ineffective when the judge erred despite

counsel's urging. Moreover, counsel can hardly be ineffective for arguing unsuccessfully against

an evidentiary ruling determined to be correct on direct appeal. *People v. Robinson*, No. 230187,

2003 WL 21205841, at *2–3 (Mich. Ct. App. May 22, 2003) (unpublished)

B.

Robinson's second claim is that trial counsel failed to "effectively utilize defense experts."

The Michigan Court of Appeals discussed this claim directly and found it unpersuasive:

> Defense counsel testified at the *Ginther* hearing that he determined that the witnesses urged by defendant would not be particularly helpful or persuasive. Defense counsel's decisions with respect to the witnesses who were called and the evidence that was presented were matters of trial strategy, which this Court will not second-guess.

*Robinson*, 2003 WL 21205841, at *3. This conclusion by the state appellate court correctly employs the Supreme Court's mandate that "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. The Supreme Court has specifically noted the "wide latitude counsel must have in making tactical decisions" and that it is "all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence." *Id.* Because trial counsel gave a reasonable explanation as to his reasoning and the Michigan state courts accepted this explanation, we find Robinson is not entitled to relief under § 2254 on the basis of a deficiency in using experts.

Robinson claims that her trial counsel's decisions "rested on a base of preparatory neglect" and therefore is not entitled to the deference the courts generally afford a counsel as to his or her trial strategy. Certainly, "[j]udicial deference to counsel is predicated on counsel's performance of sufficient investigation and preparation to make reasonably informed, reasonably sound judgments." *Mayfield v. Woodford*, 270 F.3d 915, 927 (9th Cir. 2001). Robinson, however, offers no evidence that her trial counsel was unprepared. She claims there was a "dramatic difference between what experts Ross and Okla were prepared to testify to in contrast to what was actually presented," but Robinson never offers any evidence that this supposed contrast was due to a lack of preparation.

C.

Robinson also argues that trial counsel's failure to present the testimony of Mark Fecteau amounted to ineffective assistance of counsel. The Michigan Court of Appeals addressed this claim directly: "Counsel decided not to call Fecteau based on the hostility between Fecteau and defendant. We will not second-guess this decision." *Robinson*, 2003 WL 21205841, at *4. Because this was a strategic decision by trial counsel, the state court's decision was not an unreasonable application of clearly established federal law.

Robinson presents an affidavit signed by Fecteau claiming that Robinson's trial counsel never contacted him and argues that this affidavit evidences a failure to investigate by trial counsel. The Supreme Court has clearly stated that effective assistance of counsel requires adequate investigation into possible avenues for defenses. *Williams*, 529 U.S. at 391–92. Here, counsel appears to have already known all of the substantive testimony that Fecteau could have provided. Robinson's trial counsel indicated at the post-trial hearing that he was aware of the information that Fecteau possessed but reasoned that the supposed hostility between Fecteau and Robinson would make him a poor witness. Trial counsel also indicated that it was Robinson, not he, who harbored a "tremendous fear" of involving Fecteau. The record does not support a finding that counsel was deficient in failing to conduct an adequate investigation.

Moreover, even if trial counsel's failure to investigate was a constitutionally deficient performance, Robinson cannot show prejudice. To succeed on a *Strickland* claim, Robinson must demonstrate a "reasonable probability that . . . the result of the proceeding would have been different" had the trial counsel interviewed Fecteau. *Strickland*, 466 U.S. at 694. Based on Fecteau's affidavit, trial counsel would have learned no new substantive details about the case.

D.

Robinson finally claims that trial counsel's failure to object to either prosecutorial misconduct or impermissible bolstering of D.R.'s testimony by the State's expert witness amounts to ineffective assistance of counsel. Because neither prosecutorial misconduct nor improper bolstering occurred, Robinson's claim is without merit.[5]

As the district court noted, Robinson's myriad prosecutorial misconduct claims fall into three general categories: (1) presentation of prejudicial and inflammatory evidence; (2) references to facts not in evidence; and (3) improper rebuttal closing argument. The comments pointed to in the first category mainly come from the State's cross-examination of Robinson. Most of the damaging facts elicited during cross-examination had already been mentioned in the direct examination, and much of it was relevant as to Robinson's credibility. The second set of comments involve the prosecution's reference to certain jail records not offered into evidence. As the district court noted, however, this comment by the prosecution was based on the prosecutor's confusion about certain jail records; this line of questioning was quickly dropped upon realizing the mistake.

Finally, Robinson points to words like "ridiculous," "pathetic," "angry," and "liar" used in the prosecution's rebuttal closing to argue misconduct. In general, the government's comments during closing arguments are "reviewed deferentially on habeas review," *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004), and even without this deference, prosecutors are "entitled to wide

---

[5] It is not clear whether the state court addressed this claim of ineffective assistance of counsel specifically. However, the Michigan Court of Appeals did address the underlying issue of prosecutorial misconduct and found no evidence of misconduct. *Robinson*, 2003 WL 21205841, at *5.

latitude in rebuttal argument." *United States v. Wall*, 130 F.3d 739, 745 (6th Cir. 1997) (internal

quotation marks omitted). In context, none of these words was used by the prosecution in an

inappropriate manner.

Robinson also contends that the prosecution's expert witness Mary Kay Neumann was used

to improperly bolster D.R.'s testimony. While the prosecution is not permitted to offer any

"improper suggestions, insinuations, and, especially, assertions of personal knowledge," *Berger v.*

*United States*, 295 U.S. 78, 88 (1935), no such action took place in this case. Again, Robinson takes

excerpts of the witness's testimony out of context. For instance, Robinson points to Neumann's

testimony that "there's no other reason for this child saying this except for that it happened." That

phrase, however, came from Neumann's discussion of the general methodology employed by the

investigative team assembled at Care House—it is not a discussion of this case in particular and "this

child" does not refer to D.R. specifically.[6]

Because there was no bolstering nor prosecutorial misconduct during Robinson's cross-

examination, the prosecution's rebuttal closing, or elsewhere, the failure to object to these various

---

[6] Neumann's testimony on this point reads:

"Q.    And the [investigative team's] goal is so that no stone is left unturned?"
"A.    Correct. That we check every avenue so that we can make sure that we rule different avenues out. So that we boil it all down to what the child's saying, so there's no other reasons for this child saying this except for that it happened."
"Q.    And the goal is to get as much information as possible before charging?"
"A.    Yes, it is. Yes, it is."

09-1248
*Robinson v. Davis*

comments and statements was not ineffective assistance of counsel.  Therefore, Robinson is not

entitled to relief.

IV.

For the foregoing reasons, we affirm the decision of the district court.  Robinson's petition

for the writ of *habeas corpus* is denied.